### DECISION OF CHIEF JUSTICE LEE.—IN ADMIRALTY.

### THOMAS SPENCER *vs.* WM. BAILEY AND GEORGE S. GILBERT. Motion to dismiss the suit.

The court declared the meaning of the 84th Article of the Constitution, which extends the judicial power "to all cases of admiralty and maritime jurisdiction;" and of Sec. 2, of the Act relating to the Judiciary Department, approved May 26, 1853.

The jurisdiction of admiralty courts is not confined to cases where a maritime *lien* exists.

The attachment of property in an admiralty suit, is not governed by Secs. 6, 7 and 8, pp. 14 and 15 of Vol. 2, Stat. Laws, relating to Police Courts.

Nor does Sec. 3, p. 40, of Vol. 2, Statute Laws, apply to suits in admiralty.

The first point raised by the learned counsel for the defendants is, that this court has no jurisdiction in the case, on the ground that it belongs to the *common law*, rather than to the *admiralty* side of the court, and they contend that there can be no admiralty jurisdiction except in cases of a maritime *lien*. The supplies, say they, for which this suit is instituted, were furnished not to the "Nile," the vessel attached, but to the "Walter Claxton," and though the jurisdiction would be good and complete were the "Walter Claxton" proceeded against, yet it cannot hold against the "Nile," even granting that she has the same owners and captain. Now, clearly the plaintiff had no lien on the "Nile" for supplies furnished to the "Walter Claxton," and if the proposition of the learned counsel be true, that there

can be no admiralty jurisdiction unless in cases of a maritime *lien,* then his point is made good, and the plaintiff must seek his remedy somewhere else. But let us examine this matter. The eighty-fourth article of the Constitution of the Hawaiian Islands declares that the judicial power shall extend "to all cases of admiralty and maritime jurisdiction," and Section 2, of the Act relating to the Judiciary Department, passed on the 3d of December, 1852, confers upon this court jurisdiction "in all admiralty and maritime cases;" and which jurisdiction is precisely the same as that existing in the admiralty courts of the United States. (Constitution of the United States, Article 3, Sec. 2.) It only remains then, for us to determine what *are* cases of "admiralty and maritime jurisdiction" under the practice of the courts of the United States, which practice has been mainly derived from that of England, and if that class of cases extends to the one now under consideration, then it will be conceded that we have jurisdiction. If not, and if it shall be found confined to cases of maritime *lien* only, as the defendants' counsel contend, then the suit must be dismissed.

What is the true interpretation of that clause of the Constitution, "*all cases of admiralty and maritime jurisdiction ?*" I cannot better answer this question, than by giving the language of the distinguished Judge Story in that most luminous of all cases, relating to the subject of admiralty jurisdiction, De Lovio *vs.* Boit *et al.*, 2 Gallison's Rep. 435: "If we examine the etymology, or received use, of the words "admiralty" and "maritime jurisdiction," we shall find that they include jurisdiction of all things done upon and relating to the sea, or, in other words, all transactions and proceedings relative to commerce and navigation, and to damages and injuries upon the sea. In all the great maritime nations of Europe, the terms "admiralty jurisdiction," are uniformly applied to the courts exercising jurisdiction over maritime contracts and concerns."

The admiralty is of very high, if not of immemorial antiquity, and though the full nature and extent of its jurisdiction is somewhat involved in obscurity, in common with the courts of common law, yet there can be little doubt that the admiralty and maritime courts of England, France, Holland, Spain and all other European States had one common model ; and that their jurisdiction included the same subjects, as the consular courts of the Mediterranean. These courts are described in the *Consolato del Mare* as having jurisdiction "of all controversies respecting freight; of damages to goods shipped; of the wages of the mariners; of the partitions of ships by public sale; of jettison; of commissions or bailments to masters and mariners; of debts contracted by the master for the use and necessities of his ship; of agreements made by the master with merchants, or by merchants with the master; of goods found on the high seas or on the shore; of the armament or equipment of ships, gallies or other vessels; and generally of all other contracts declared in the customs of the sea." (2 Brown's Admiralty, 30; 2 Gallison's Rep., 401.)

After a lengthy and most satisfactory examination of the nature and extent of admiralty jurisdiction from the most ancient times, the learned Judge Story, in the case of De Lovio *vs.* Boit *et al.*, comes to the following conclusion: "On the whole, I am, without the slightest hesitation, ready to pronounce, that the delegation of cognizance of

"all civil cases of admiralty and maritime jurisdiction" to the courts of the United States comprehends all maritime contracts, torts and injuries. The latter branch is necessarily bounded by locality; the former extends over all contracts, (wheresoever they may be made or executed, or whatsoever may be the form of the stipulations,) which relate to the navigation, business or commerce of the sea."

" The next inquiry is, what are properly to be deemed " maritime contracts." Happily in this particular there is little room for controversy. All civilians and jurists agree, that in this appellation are included, among other things, charter parties, affreightments, marine hypothecations, contracts for maritime service in the building, repairing, supplying and navigating ships; contracts between part owners of ships; contracts and *quasi* contracts respecting averages, contributions and jettisons, and, what is more material to our present purpose, policies of insurance."

I can discover nothing in all the books confining the jurisdiction of admiralty courts to cases where a maritime *lien* exists, and there is not the slightest doubt in my mind that the contract involved in this case is a maritime contract, and properly within the jurisdiction of this court. (Vide 3 Story's Com. of the Constitution, 527, 532; Conkling's Admiralty Jurisdiction and Practice, 8, 14, 50 to 55, and authorities there cited; also, the case of Fessenden *vs.* the cargo of the ship Charles, decided in this court Jan. 22, 1853, and published in the *Polynesian* of Feb. 5, 1853.)

But say the learned counsel, granting the court has jurisdiction, we contend that the plaintiff has no right to issue an attachment against our property, unless he complies with the provisions of the statute in cases of attachment issuing from the courts of the district justices. He must not only give us a bond to save us harmless from all damages, but he must make an affidavit of certain facts provided in the statute; which he has not done, and hence the suit should be dismissed.

If this case was of a like nature with those referred to in the statute, or the process the same as that contemplated in Section 6, 7 and 8, pp. 14, 15, of the 2d volume of the Statutes, then the argument to dismiss this suit for nonconformity therewith might have weight; but it is totally different. The cases therein referred to have no relation whatever to the court of admiralty, whose rules, process and practice are entirely of another nature, and it would be as reasonable to object to the seizure of a vessel on a libel, for any cause whatever, unless made in conformity with that statute, as to object to the process in the present instance. 'Tis true, the process is new in this kingdom, and one with which the learned counsel say they are unacquainted, but it is not new in the United States, to which country the defendants belong, nor other great maritime countries; and it seems to me a just and reasonable process, well approved by the admiralty courts of older and wiser nations than this, and safe to adopt here. It is an admiralty process known in the United States as a " Warrant to arrest the person of the defendant; with a clause, if he cannot be found, to attach his goods and chattels," &c. (Vide Conkling's Admiralty Jurisdiction and Practice, 478 *et seq.*; Mauro *vs* Almeida, 10·Wheaton's Rep., 473.) It is considered a most salutary proceeding in the United States, and one of great utility to com-

merce. Our admiralty practice has not been prescribed by our stat-
utes, except to a limited extent in a very few instances, and, where it
is not prescribed, our courts are left free to adopt so much of that of
England, France, the United States, and other maritime countries, as
they may think wise, just, and best adapted to the circumstances of
this country. The only question to my mind is, is it wise, is it just, is
it safe to adopt the practice of the United States in this instance? I
think it is. But, say the learned counsel, there can be no lien on the
" Nile" for supplies furnished the " Walter Claxton," though she
has the same captain and owners, and will you then hold the " Nile"
responsible for those supplies? Very true, there is no lien on the
" Nile" for those supplies, and Spencer could not hold a plank of her
on any such ground; but no such lien is contended for, and none
sought to be enforced in the present suit. But what is claimed is
this, if a party sends a ship here for supplies, which are furnished
her, then refuses to pay for those supplies, and keeps himself and
ship out of the jurisdiction of this kingdom, the party furnishing such
supplies, provided they are necessary, may obtain a process, like the
one issued in this case, to compel the appearance of the owner of the
ship, and, in case he cannot be found, to seize any other ship or pro-
perty belonging to the same owner, within the jurisdiction of this
court, and hold the same until his debt shall be satisfied, or the pay-
ment thereof secured, in case it shall be found just. This process is
legal and equitable, and cannot be otherwise than safe to the ship
owner, especially where, as in this instance, good and ample security
is given by the plaintiff to pay all damages in case he fails to make
good his demand. The learned counsel seem to misapprehend the
nature of this proceeding altogether, and treat it as a process *in rem*
against the " Nile," while in fact it is no such thing, but a process
*in personam* against the owners of the " Walter Claxton," under
which the " Nile" is taken just like any other property, in the ab-
sence of the owners, and held as a security for the plaintiff's debt.
It is no hardship upon the defendants, for if they wish to release their
property, all they have to do is to give a bond or stipulation with
sufficient sureties to pay the amount that may be found justly due to
the plaintiff under his maritime contract.

But there is a third and last ground on which it is claimed this suit
should be dismissed, namely, for informality of service. It is said
the service has not been in accordance with Section 3, p. 40, 2d vol.
Stat. Laws, which requires that in case the defendant cannot be found
a copy of the petition, process, and other papers should be left " with
some agent or person transacting the business of the defendant," &c.
To this it was answered that a copy was served on the counsel of the
defendant, and that, in any event, the appearance of the defendants
by their counsel cures any informality of service, and it is now too
late to raise any objection to that service. But it is unnecessary for
me to discuss the question whether the service has been in accord-
ance with the statute referred to, and whether, if not, it has been
cured by the appearance of defendants' counsel; for the process and
service contemplated in that statute are not at all applicable to this
case, and consequently can have no bearing upon it. Neither is this
process named and its service prescribed in Section 20, p. 46, of the
Act to organize the Judiciary, 2d vol. Stat. Laws, which the learned

counsel for defendants contend requires that a copy of the petition should be left on the "Nile." It is not a process "issued in any such case" as is defined in said section of the statute. The "Nile" is not attached for any "maritime lien or liability" attaching to that *particular vessel*, but is seized like any other *property of the defend-ants*, under a process *in personam*. In my opinion, the Marshal hav-ing published in the *Polynesian* newspaper the substance of the libel, the process issued, and the return thereon, with a notice to all per-sons interested, to show cause if any they have why the prayer of the libellant should not be granted, and having also affixed a copy of the same to the mainmast of the ship, agreeably with the order of the court, the service has been complete, good, and fair to all parties.

The great and paramount object in courts of admiralty, as it should be in all courts, is prompt, speedy and substantial justice to all par-ties, in every case, without regard to nice technicalities, and I see no reason, thus far, why the plaintiff's suit should be dismissed.

Mr. Bates proctor for complainant.

Mr. Blair and Mr. Harris proctors for defendants.