In the Matter of the Brigantine Nicolaus.

SUPREME COURT—IN BANCO.

JANUARY TERM, 1881—IN ADMIRALTY.

*Harris, C. J., Judd and McCully, J.J.*

In the Matter of the Brigantine Nicolaus.

WHERE REPAIRS HAVE BEEN MADE or necessaries supplied to a foreign ship, the general maritime law gives the party furnishing same a lien upon the ship itself for his security. He may enforce the same by a libel *in rem* on the ship, and even though the owner be present, if the credit was in fact given to the vessel. A Justice of the Supreme Court is a Court having admiralty and maritime jurisdiction.

OPINION OF MR. JUSTICE JUDD, APPEALED FROM.

This is a libel in admiralty by G. W. Macfarlane, doing business in this city as G. W. Macfarlane & Co., against the Jaluit brigantine Nicolaus. The late owner, Henry Freeman, and the present owner, Edward B. Thomas, are respondents.

The essential facts appear in the opinion. In June last the brigantine Nicolaus was placed by Henry Freeman, her owner, in the hands of libellant to sell her cargo of firewood, collect freight due, pay off her crew, supply necessaries, and also to sell the vessel, which was limited in price at $2,500. Mr. F. T. Lenehan, the managing clerk of libellant, transacted all the business with Freeman, and the account submitted covering a period from the 16th June to the 22d November, shows a total debit of $1,062.44, and a credit of $349.80, and a balance due of $712.64. The account is admitted by Freeman to be correct.

Mr. Macfarlane thought the account was growing too rapidly and told Mr. Lenehan that he would have nothing to do with this affair, and that if he advanced more he would hold him

responsible for it in case of loss, and Lenehan says he guaranteed the account to his principal.

1.  It is urged by the respondents that these facts show that Lenehan and not the libellant is the real party in interest. The receipts, however, signed by Mr. Freeman, were all to G. W. Macfarlane & Co., and the orders drawn by him were also upon the same firm, and the account was entered in the firm's books. It would be a violation of reason to hold that because an employee of a commercial house, confessedly the agent of his principal, does every part of a particular business transaction, he thereby becomes the real party in interest. Nor does the fact that agent gives an oral guarantee to his employer to answer for the debt of another, which cannot be enforced at law, make him the proper party to sue upon the claim.

2.  It is contended in argument that the facts show that no maritime lien was created which this Court has jurisdiction to enforce; that a Judge of this Court has judicial power by our constitution and laws over all cases of admiralty, and maritime jurisdiction was well settled in the case of Spencer vs. Bailey and Gilbert, 1 Haw. Rep., 108. Since that time (1853) this Court has jurisdiction of causes like the one at bar on the admiralty side of the Court, and this jurisdiction is distinctly conferred by Sections 819, 823 and 829 of the Civil Code. Where repairs have been made or necessaries furnished to a foreign ship or to a ship in a port of a State to which she does not belong, the general maritime law gives the party a lien upon the ship itself for his security, and he may maintain a suit in rem in admiralty to enforce his right. 1 Abbot Shipping, p. 186 and notes; the General Smith; 4 Wheaton, 438; the Eliza Jane, Sprague's Decisions, 152.

In this last case Judge Sprague says that the fact of furnishing supplies and repairs to a foreign vessel is of itself sufficient to create a lien, that is, a tacit hypothecation of the vessel. "There need be no express stipulation for such

hypothecation; credit must indeed be given to the vessel, but it need not be proved that there was any special agreement to that effect.   Where such supplies are obtained on credit, it is presumed that credit was given to the vessel as well as to the owners, unless there is something in the circumstances of the case to repel such presumption."

The Nicolaus came to this port a foreign vessel under the flag of Jaluit, one of the Marshall Islands.   She needed supplies.   That credit was given to the vessel is to be inferred from the facts in the case, and so far from there being anything to repel this presumption, I think that the fact that credit was given to the vessel is established affirmatively. The account in the books of the libellant's firm is entitled "Brigantine Nicolaus and H. Freeman owner."   All the orders drawn by the owner and receipts made by him for money are expressly stated to be "on account of the Nicolaus."

The following paper was executed by Mr. Freeman and delivered to the libellant:

"HONOLULU, July 12, 1880.

"In account Brigantine Nicolaus.—I acknowledge indebtedness to Messrs. G. W. Macfarlane & Co., of the following amounts in account, and I undertake to complete for further assurance any necessary lien on evidence of security on my vessel Nicolaus on demand.

"I have authorized the sale by Messrs. G. W. Macfarlane & Co., of the above vessel and receipt by that firm of proceeds on my account.

"HENRY FREEMAN.

"$149 in account as sole owner Nicolaus.

"$209.60 plus com."

It is not necessary to hold, in order to the enforcement of this claim, that this writing is a completely executed mortgage on the vessel to secure the sum then advanced, as well as all

subsequent advances, for, as above indicated, the fact that supplies were furnished a foreign vessel in itself creates a tacit hypothecation of the vessel. The legal effect of this paper is complete proof that credit was in fact given to the vessel.

Such a lien exists for necessary supplies as well as repairs, and may exist in favor of a consignee of the vessel. See the Eliza Jane, above cited. The lien may also obtain on a foreign vessel, though the owner be present, if the credit be given to the vessel. Bee's Adm., 18 and 181. In this view of the case (that a valid lien is created by the facts independently of the writing), it is not necessary to hold that the corespondent should have had notice of it to take him out of the character of a *bona fide* purchaser for value without notice of the lien. As Judge Sprague says, in the case of the Eliza Jane: "The purchaser could easily have ascertained whether this lien existed; and, if he omitted that precaution, it cannot defeat the claim which the libellant has in no manner relinquished or forfeited."

I think, however, that Thomas had actual notice of the lien. See evidence of Lenehan and Freeth. He received this notice in season to have rescinded his bargain for the purchase of the vessel, for he received notice of it before the money had been paid over to Mr. Freeman.

Considerable importance was placed at the hearing upon the question as to whether the vessel was sold to Mr. Thomas for less than her market value.

I do not regard this as important, for if a lien had attached in the libellant's favor the sale of the vessel for whatever sum she might be sold for, be it for a large or a small sum, would not extinguish this lien.

I think that this libel was seasonably brought for the foreclosure of a good and valid lien, and therefore decree for the libellant for the amount of $712.64 and costs, and I decree condemnation and sale of the brigantine Nicolaus to pay the

same, with privilege to the co-respondent, Thomas, to pay and discharge this lien within ten days.

E. Preston for libellant.

W. C. Jones for respondent Freeman.

J. M. Davidson for respondent Thomas.

Honolulu, December 9, 1880.

---

SUPREME COURT IN BANCO, JANUARY TERM, 1881 — HARRIS, C. J., JUDD AND McCULLY, J.J.

We having considered the record and the arguments of counsel, concur in the opinion, and affirm the judgment of Mr. Justice JUDD, as hereinabove set forth.

E. Preston for libellant.

W. C. Jones for respondent Freeman.

J. M. Davidson for respondent Thomas.

Honolulu, January 27, 1881.